**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ALEKSANDR SHAROV and MARIA SHAROV**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **MARCO RUBIO**, <br> Secretary of State, et al. <br><br> *Defendants*. | No. 25-cv-1930-MAU |

## MEMORANDUM OPINION

Plaintiffs Aleksandr Sharov and Maria Sharova (collectively "Plaintiffs") seek declaratory, injunctive, and mandamus relief to compel Defendants Marco Rubio, Secretary of State, and Kenneth Platek, Acting Director of U.S. Department of Homeland Security's National Vetting Center ("NVC") ("Defendants" or "the Government"), to adjudicate Plaintiffs' nonimmigrant visa applications. ECF No. 1.[1] Plaintiffs contend that the Government has unreasonably delayed and unlawfully withheld adjudication of their visa applications in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. *Id.* The Government moves to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 7. For the reasons set forth below, the Government's Motion to Dismiss ("Motion") is **GRANTED**.

## BACKGROUND

The Court draws the facts, accepted as true, from the Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). The Court further "takes

---

[1]    Citations are to the page numbers in the ECF headers.

judicial notice of 'information posted on official public websites of government agencies.'" *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 6 (D.D.C. Nov. 27, 2024) (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. Dec. 2, 2022)).

Plaintiffs are Russian citizens seeking to enter the United States on nonimmigrant visas. ECF No. 1 at ¶¶ 2–3. Sharov seeks a visa under the Intracompany Transferee Executive L-1B classification based on his employment with Red Hat, Inc. ("Red Hat"). *Id.* at ¶¶ 2, 4. As his wife, Sharova is a derivative L-2 applicant. *Id.* at ¶ 3. The L visa program allows multinational corporations, such as Red Hat, to sponsor nonimmigrant visas for temporary intracompany transfers to the United States of employees with certain "specialized knowledge" about the petitioning company. *See* 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. §§ 214.2(l)(1)(ii)(B)–(D).

After U.S. Citizenship and Immigration Services ("USCIS") approved Red Hat's I-129 Form, Plaintiffs interviewed with a consular officer at the United States embassy in Prague, Czech Republic, on September 9, 2024. ECF No. 1 at ¶¶ 4, 7. After the interview, the officer refused Plaintiffs' applications under Section 221(g) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1201(g), and placed the applications in administrative processing (the "221(g) Refusal"). *Id.* at ¶ 8. Although Plaintiffs submitted additional documentation upon request of the consular officer, ECF No. 1-2 at Ex. B, Plaintiffs' visa applications still "remain refused while undergoing [administrative] processing," ECF No. 1-3 at Ex. C.

Plaintiffs filed this suit on June 19, 2025, after receiving no changes to their applications for nine months. ECF No. 1. As a result of that delay, Plaintiffs allege that they are suffering from severe financial and psychological hardship, including irreparable harm to Plaintiff Sharov's career. *Id.* at ¶ 8. Defendants filed this Motion on September 26, 2025, seeking to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 7.

**LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure12(b)(1) presents a threshold challenge to the Court's subject matter jurisdiction, which the plaintiff bears the burden of establishing. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In reviewing a motion under Rule 12(b)(1), the Court will "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified).

Under Federal Rule of Civil Procedure Rule 12(b)(6), the Court must dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The right to relief in a complaint must be more than "speculative" in nature and should "state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Thus, the Court should be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged" based on the "factual content" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a challenge under Rule 12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint" by reference as well as matters of judicial notice. *Wright*, 68 F.4th at 619 (citation modified).

**DISCUSSION**

Defendants raise several arguments for dismissal under Rules 12(b)(1) and 12(b)(6), all of which this Court and others in this District have already addressed. *See, e.g.*, *Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483 (D.D.C. Mar. 31, 2025); *Ahmed*, 759 F. Supp. 3d 1; *Motevali v. Rubio*, No. 24-cv-1029, 2025 WL 885116 (D.D.C. Mar. 21, 2025), *appeal dismissed sub nom. Mehneh v. Rubio*, No. 25-cv-5001, 2026 WL 125973 (D.C. Cir. Jan. 16, 2026). As threshold arguments, Defendants challenge Plaintiffs' standing to sue Defendant Platek and argue the

3

doctrine of consular non-reviewability bars this Court's review of Plaintiffs' claims.  ECF No. 7 at 11–19.  Defendants further argue that Plaintiffs have failed to state a claim of unreasonable delay.  *Id.* at 19–26.  After careful review of the record and relevant authorities, the Court finds Defendants' final argument persuasive and holds that Plaintiffs have failed to state a claim under Rule 12(b)(6) that the delay is unreasonable.

### I.    Plaintiffs Have Pled Standing to Sue Defendant Platek.

The Court must begin by resolving any challenges to its subject matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Plaintiffs bear the burden of showing that they have standing to sue the Defendants.  *Id.*  To meet this burden, Plaintiffs must plead: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'"  *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendants argue Plaintiffs cannot meet prongs two (causation) and three (redressability) against Defendant Platek because he plays no role in adjudicating visa applications and cannot provide the relief Plaintiffs seek.  ECF No. 7 at 11.  Courts in this District have already rejected this exact and substantially similar arguments.  *See Khodabakhshian v. Rubio*, No. 25-cv-1981, 2025 WL 3135640, at *1 n.1 (D.D.C. Nov. 10, 2025) (finding plaintiff had sufficiently alleged standing against Platek to survive a motion to dismiss in nonimmigrant visa case); *Ulianov v. Rubio*, No. 24-cv-3433, 2025 WL 1865111, at *4 n.5 (D.D.C. July 7, 2025) (same); *see, e.g., Ahmed*, 759 F. Supp. 3d at 9 (finding plaintiff had sufficiently alleged standing against the

Secretary of State to survive a motion to dismiss because he could "play a role in the pace of visa adjudications"); *Motevali*, No. 24-cv-1029, 2025 WL 885116, at *3–4 (finding plaintiff had sufficiently alleged standing against the lead of the Office of Screening, Analysis, and Coordination ("SAC") to survive a motion to dismiss because he played "a major role in overseeing the administrative processing of visas refused under Section 221(g)").

Similarly, here, Plaintiffs allege that the NVC vets nonimmigrant visa applicants, which would include Plaintiffs. *See* ECF Nos. 1 at ¶ 49; 1-1 at ¶ 17. Plaintiffs also allege that, as Acting Director of the NVC, Platek "is charged with leading day to day NVC operations, which includes supporting all adjudication and determinations by adjudicating agencies in vetting visa applications . . . ." ECF No. 1 at ¶ 32. Indeed, any order compelling a consular officer to make a final decision on Plaintiffs' applications would also require the NVC to complete its vetting. *See* ECF Nos. 1-1 at ¶ 17; 1-2 at Ex. B; 1-3 at Ex. C. Accordingly, Plaintiffs have pled sufficient facts at this stage to demonstrate they have standing to sue Defendant Platek.

## II. Plaintiffs Have Identified a Clear Non-Discretionary Duty on Which the Government Must Act.

In asserting a claim of unreasonable agency delay under the APA, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take'" by law. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). If Plaintiffs are successful, a court may "compel [the] agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Likewise, to obtain a writ of mandamus, a plaintiff must show, among other requirements, that the Government has a clear duty to act under the circumstances. *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (citing *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)); *see also* 28 U.S.C. § 1361 (granting district courts original jurisdiction "to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff").  Because the standards for obtaining relief through the APA and Mandamus Act are essentially the same, for both claims, a plaintiff need only "allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action."  *Sharifishourabi v. Blinken*, No. 23-cv-3382, 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. Mar. 19, 2024)).

Both Parties' arguments hinge on Section 555(b) of the APA, which requires agencies "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time" to "proceed to conclude a matter presented to it."  5 U.S.C. § 555(b). Plaintiffs allege that Section 555(b), the INA, and its implementing regulations,[2] set forth a clear non-discretionary duty for Defendants to act on Plaintiffs' visa applications.  ECF No. 1 at ¶¶ 102, 92–125.  Relying on the D.C. Circuit's decision in *Karimova v. Abate*, Defendants argue that Section 555(b) does not set forth a duty to act because their refusal and placement of Plaintiffs' visa applications in administrative processing was a final decision.  No. 23-5178, 2024 WL 2024 WL 3517852, at *2–6 (D.C. Cir. July 24, 2024); *see* ECF No. 7 at 9–16.  Therefore, Section 555(b) *alone* could not provide a duty for the Government to take further action on their applications. *Karimova*, No. 23-5178, 2024 WL 2024 WL 3517852, at *2–6.  Plaintiffs counter that *Karimova* is neither binding nor persuasive, and Defendants still have a duty under Section 555(b) and other provisions to render a final adjudication of Plaintiffs' applications.  ECF No. 10 at 20–38.

Plaintiffs are correct.  This Court has already held that *Karimova* is not binding and that the analysis is not persuasive.  *Aramnahad*, No. 24-cv-1817, 2025 WL 973483, at *6–7 (finding

---

[2]    In their Complaint, Plaintiffs allege Defendants have "statutory and mandatory duties to process Plaintiffs' nonimmigrant visa[s]" under "8 U.S.C. § 1202(e), 22 C.F.R. § 41.121(a), 9 FAM 403.7-3, and 9 FAM 403.10-2(A) . . . ."  ECF No. 1 at ¶ 102.

there was a clear duty to act under Section 555(b) of the APA, the INA, and certain implementing regulations).  Indeed, the majority[3] of the courts in this District to have confronted the question have reached the same conclusion.  *Id.* at *6 (collecting cases); *see, e.g., Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 81 (D.D.C. Sept. 12, 2025) ("[T]he D.C. Circuit's decision in *Karimova* does not bind [the Court]."); *Fetanat v. Rubio*, No. 24-cv-2298, 2025 WL 2643487, at *3 (D.D.C. Sept. 15, 2025) ("join[ing] the majority of the courts in this district that have confronted the question and have held that *Karimova* is not binding") (citation modified); *Moradi v. Rubio*, No. 24-cv-2569, 2025 WL 2779931, at *1 (D.D.C. Sept. 30, 2025) ("[T]he court does not read *Karimova* so broadly.").

Moreover, unlike the plaintiff in *Karimova*, here, Plaintiff does not rely solely on Section 555(b) to impose a duty on the Government but on two additional provisions, 5 USC § 706(2) (Count 1) and the Mandamus Act, 28 USC § 1361 (Count III), as well as other implementing regulations.  ECF No. 1 at ¶¶ 92–99, 102, 114–125; *see Motevali*, No. 24-cv-1029, 2025 WL 885116, at *6 (finding that *Karimova* is not controlling because "plaintiffs cited Section 555(b) but *also* grounded their argument in three alternative provisions").  To that end, courts in this District have consistently concluded that "both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Ahmed*, 759 F. Supp. 3d at 10 (collecting cases).  In coming to this conclusion, courts often note that *Karimova* did not discuss whether any other source of law, in conjunction with Section 555(b), creates a non-discretionary duty to adjudicate visa applications placed in administrative processing.  *See, e.g., Moradi*, No.

---

[3]    *But see Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sept. 6, 2024) (holding *Karimova* binding but finding the decision "particularly difficult" to square with the facts of the case); *Hemmat v. Blinken*, No. 23-cv-2085, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("*Karimova* squarely rejected that argument, and this court is bound by that holding."); *Amjad v. Schofer*, No. 24-cv-1773, 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (granting motion to dismiss relying on *Karimova*).

24-cv-02569, 2025 WL 2779931, at *1.  For all these reasons, Plaintiffs have certainly stated a clear non-discretionary duty on Defendants' part.

### III.    Consular Nonreviewability Does Not Bar Judicial Review Because Plaintiffs Have Not Received a Final Adjudication.

Again relying on *Karimova*, Defendants argue that, despite the facts alleged about the status of Plaintiffs' applications, Plaintiffs have received a final decision.  ECF No. 7 at 16–19.  Defendants claim that, because of this, the doctrine of consular nonreviewability bars this Court from reviewing the substance of the "consular officer's denial of a visa."  *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024); *see also Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).

Assuming the facts Plaintiffs have alleged in the Complaint are true, however, the Government has not yet rendered a final decision on Plaintiffs' visa applications.  *See supra* Discussion § II.  Accordingly, at this stage, Plaintiffs have successfully stated a claim because "the consular nonreviewability doctrine applies only to *final* decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. July 27, 2022) (collecting cases).

### IV.    Plaintiffs Have Failed to State a Claim for Unreasonable Delay.

Despite surviving Defendants' threshold challenges, Plaintiffs' claim of unreasonable delay fails under Rule 12.  The fundamental question in assessing a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus."  *Rohmeena v. Bitter*, No. 23-cv-2754, 2024 WL 3898549, at *2 (D.D.C. Aug. 22, 2024) (citation modified); *see Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. Aug. 7, 2020) ("The standard for undue delay under the Mandamus Act . . . is identical to the APA standard.") (citing *Norton*, 542 U.S. at 64).  "There

is 'no *per se* rule as to how long is too long' to wait for agency action." *In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union,* 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Instead, the D.C. Circuit in *Telecommunications Research and Action Center v. F.C.C. ("TRAC")*, set forth six factors ("*TRAC* factors") to determine whether an agency's delay was unreasonable:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984). These factors are not "ironclad," but rather provide "useful guidance in assessing claims of agency delay." *Id*. In applying the *TRAC* factors, the Court still must analyze each case "according to its own unique circumstances, because each will present its own slightly different set of factors to consider." *Ahmed*, 759 F. Supp. 3d at 11 (citation modified). For cases alleging unreasonable delay of visa adjudications, the first and fourth *TRAC* factors are the most important. *Id.* (citing *Da Costa*, 80 F.4th at 340).

Defendants argue that each *TRAC* factor weighs in their favor. ECF No. 7 at 19–26. Plaintiffs disagree and assert that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." ECF No. 10 at 43.[4] But "binding precedent

---

[4]    Indeed, Plaintiffs want Defendants to produce an administrative record under Local Civil Rule 7(n) before the Court engages in a *TRAC* analysis. ECF No. 10 at 36–37. But the local rule does not apply here because Plaintiffs challenge Defendants' inaction, or their failure to adjudicate their visa applications. And, in similar cases, courts in this District have found that "if any agency fails to act, there is no 'administrative record' for a federal court to review." *See, e.g., Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 (D.D.C. July 9, 2021) (quoting *Nat'l Law Ctr. on Homeless. & Poverty v. U.S. Dep't of Vets. Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. Feb. 3, 2012)).

from the D.C. Circuit—not to mention a cavalcade of case law from this District—shows otherwise." *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-cv-3688, 2024 WL 3010874, at *4 (D.D.C. June 14, 2024) (citing *Da Costa*, 80 F.4th at 340–46). At the motion to dismiss stage, the Court applies *TRAC* factors "not to determine whether there has been an unreasonable delay, but to determine if a plaintiff's complaint alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (citation modified). Based on the Court's application of *TRAC* factors in this case, Plaintiffs have failed to state a claim of unreasonable delay.

### A.   *TRAC* Factors One and Two Weigh in Favor of the Defendants.

It is well-settled that *TRAC* factor one, which examines whether a "rule of reason" governs the delay, is the most important. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation modified). Indeed, a delay caused by an agency's "failure to follow any rule of reason is, almost tautologically, unreasonable." *Jingjing Liu v. Mayorkas*, No. 20-cv-654, 2021 WL 2115209, at *5 (D.D.C. May 25, 2021). The second *TRAC* factor, which asks whether Congress has imposed a timetable on Defendants, is usually analyzed with the first factor. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. Nov. 19, 2020). Together, these factors require the Court to determine whether there is "any rhyme or reason—congressionally prescribed or otherwise—for the agency's delay . . . ." *Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *6 (D.D.C. Mar. 8, 2024) (citation modified).

Defendants argue that the delay between September 9, 2024, the date of their consular interview, to present[5] cannot qualify as an unreasonable delay under this District's case law,

---

[5]   To calculate the amount of delay, some courts will consider the time between the last agency action and when the court issues its opinion. *See Kussem v. Blinken*, No. 21-cv-1441, 2022 WL 670831, at *3 (D.D.C. Mar. 7, 2022).

considering there is no applicable statutory or regulatory timetable. ECF No. 7 at 21–23. Plaintiffs disagree, arguing that 8 U.S.C. § 1571(b) requires a nonimmigrant visa application be completed within 180 days of its filing and that other circuits have found similar delays unreasonable. ECF No. 10 at 49–50. In addition, Plaintiffs argue that Defendants' process for vetting applicants refused under Section 221(g) follows no rule of reason because security vetting requests, such as requesting Security Advisory Opinions ("SAOs"), are not resolved on a first-in-first-out basis. *Id.* at 50–51.

Defendants are correct that there is no mandatory statutory or regulatory timetable. *See Ahmed*, 759 F. Supp. 3d at 12 (noting 8 U.S.C. § 1571(b) is not binding); *Da Costa*, 80 F.4th at 344 (describing 8 U.S.C. § 1571(b) as an "aspirational statement"). Accordingly, the Court must turn to case law. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."). Although there is no straightforward rule, courts in this District typically find delays between three and five years reasonable and delays of more than five years unreasonable. *Ahmed*, 759 F. Supp. 3d at 6 (finding a five-and-a-half-year delay on processing a nonimmigrant visa fell "within the range. . . [that] is generally unreasonable"). Recently, the *Motevali* court found a seventeen-month delay in adjudicating an immigrant visa was "simply not enough" to tip *TRAC* factors one and two in favor of a visa applicant. No. 24-cv-1029, 2025 WL 885116, at *7. Although the Court recognizes that nonimmigrant visas may have shorter processing times than immigrant visas, Plaintiffs waited only nine months for a decision before filing this suit. At the time of this opinion, Plaintiffs have waited almost 18 months. For *TRAC* factors one and two, the weight of authority does not support a finding that this delay is unreasonable.

11

Moreover, even though it is not the rule Plaintiffs would like, Defendants have articulated a rule of reason that governs adjudicating visas in administrative processing.  ECF No. 1-1 at ¶¶ 26–27 (explaining that the complexity of the process prevents requests from being resolved in a first-in-first-out basis).  Considering the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," *Da Costa*, 80 F.4th at 340 (citation modified), the Court disagrees that the delay is "tautologically unreasonable" just because Defendants do not resolve security vetting requests on a first-in-first-out basis,  *Jingjing Liu*, No. 20-cv-654, 2021 WL 2115209, at *5. *See also Shoaie v. Blinken*, No. 24-cv-1513, 2024 WL 4697732, at *10 (D.D.C. Nov. 6, 2024) (rejecting the argument that the SAC's security vetting process, which includes requesting SAOs prior to adjudicating applications, does not follow a rule of reason despite an alleged delay of twenty months).

### B.    *TRAC* Factor Four Weighs in Favor of the Defendants.

Moving to the next most important factor, *TRAC* factor four evaluates the effect a court order compelling agency action may have on "competing agency priorities." *Da Costa*, 80 F.4th at 343.  For example, the D.C. Circuit has refused to grant relief, even if all other *TRAC* factors favored a plaintiff, when "a judicial order putting [a plaintiff] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)) (citation modified).

Defendants argue that Plaintiffs seek to cut the visa adjudication queue.  ECF No. 7 at 23–24.  Plaintiffs contend that there cannot be a queue without a first-in-first-out system and, even if there were a queue, Plaintiffs should be at the front of it by now. ECF No. 10 at 52–55.  Regardless of whether a queue exists, any order from this Court requiring Defendants to speed up processing

Plaintiffs' visa applications would effectively require Defendants to reorder their priorities, which this Circuit strongly disfavors. *See In re Barr Labs., Inc.*, 930 F.2d at 76 ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. Jan. 16, 2021) ("While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities."); *Da Costa*, 80 F.4th at 344 ("While judicial intervention could assist the Plaintiffs, it would likely impose offsetting burdens on equally worthy [ ] visa petitioners who are equally wronged by the agency's delay.") (citation modified); *Ghadami v. Dep't of Homeland Sec.*, No. 19-cv-0397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (finding that "expediting review in [plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").

### C.    *TRAC* Factors Three and Five Are Neutral, at Best.

*TRAC* factors three and five consider whether the facts alleged render judicial intervention "more justified." *Ahmed*, 759 F. Supp. 3d at 7. Specifically, factor three asks whether "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Factor five evaluates the "nature and extent of the interests prejudiced by delay." *Da Costa*, 80 F.4th at 344 (citation modified). Defendants acknowledge the impact of the delay on Plaintiffs but argue that advancing their applications hurts others, all of whom may have experienced substantially worse impacts. ECF No. 7 at 25. Plaintiffs argue that they have alleged sufficient and significant harm, including "severe financial and psychological hardship, [like] irreparable harm from their career's stagnation." ECF No. 1 at ¶ 8.

13

Plaintiffs allege no further facts in support of financial and psychological harm, rendering the allegations conclusory.  Plaintiffs only highlight that Plaintiff Sharov has lost professional employment opportunities and hopes to work at Red Hat's office in Raleigh, North Carolina as a Software Maintenance Engineer.  ECF No. 10 at 52.  The Court acknowledges that Plaintiffs face hardship from this delay, but "[i]t is not just [Plaintiffs'] health and welfare that the Court must consider, but also that of others similarly situated."  *Pushkar v. Blinken*, No. 21-cv-2297, 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021).  These allegations, although serious, do not amount to harm alleged by other visa applicants.  *See Da Costa*, 80 F.4th at 345 (finding *TRAC* factors three and five did not favor visa applicants where plaintiffs' "allegations [did] not specifically link [to] their personal circumstances in Durban; they do not, for example, allege that they are unable to access electricity, water, food, or shelter.").  Indeed, economic harms, which Plaintiffs have alleged here, are usually entitled to less weight in this analysis.  *See Bega v. Jaddou*, No. 22-cv-2171, 2022 WL 17403123, at *7 (D.D.C. Dec. 2, 2022); *Telles v. Mayorkas*, No. 21-cv-395, 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (finding the inability to "move forward" with "life in the United States" and "expense, stress, and uncertainty" fall far short of health and welfare harm).  Therefore, without more, these factors are, at best, neutral to Plaintiffs' claims of unreasonable delay.

### D.    *TRAC* Factor Six Favors the Defendants.

Finally, *TRAC* factor six asks the Court to consider "whether there is any impropriety lurking behind agency lassitude."  *Da Costa*, 80 F.4th at 345 (citation modified).  Defendants correctly point out that there are no allegations of bad faith in Plaintiffs' Complaint.  ECF No. 7 at 25–26.  Plaintiffs assert that "it is an act of bad faith on the part of Defendants in failing to adjudicate Plaintiffs' visas for so many months since the application submissions and interview,

without any substantial update, to the extreme detriment of Plaintiffs." ECF No. 10 at 56. Specifically, the "utter indifference to a congressional deadline" supports an inference of bad faith. *Id.* (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76). Plaintiffs' conclusory allegations are neither sufficient to support a specific inference of bad faith on Defendant's part nor to tip factor six in Plaintiffs' favor.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 7, is **GRANTED**. The Court will issue a separate Order.

**SO ORDERED.**

Date: March 18, 2026

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE